[Civ. No. 5377. Second Appellate District, Division Two.—September 10, 1929.]

HRIPSIME PARNAY, Respondent, v. E. C. AMLING COMPANY (a Corporation), Appellant.

Frank M. Smith and J. Gilbert Fall for Appellant.

Carter & Webster for Respondent.

BURNELL, J., *pro tem.*—This is an appeal from a judgment for the purchase price of certain nursery stock alleged to have been sold and delivered by respondent to appellant corporation. The sole question involved is the authority of the president of the corporation to make the purchase on its behalf.

There is evidence to establish the fact that E. C. Amling was president of the E. C. Amling Company and held a majority of its stock. About December 20, 1921, Amling, accompanied by his son Harold R. Amling, secretary, treasurer and general manager of the corporation (the business of which was buying and selling cut flowers), went to the nursery of respondent at Pasadena and priced heather plants, inquiring particularly as to special rates on quantity lots, and finally agreed to purchase fifteen hundred heather plants in various sizes. This conversation was followed by a written order on the letter-head of the corporation "confirming our conversation of yesterday," specifying delivery

at Sawtelle and inclosing a check for $500 on account. It was signed ''E. C. Amling Co., E. C. Amling.'' Later on and prior to delivery E. C. Amling again visited the nursery, examined the plants and agreed on cutting them back. He also attended to the delivery, sending trucks for that purpose. Harold Amling, the son, testified that he knew nothing about the order at the time, but this is negatived by the testimony of respondent's manager as to the former's presence with E. C. Amling when the verbal order was given.

The purchase seems to have been made in the ordinary course of business, and as was said in *Newhall* v. *Joseph Levy Bag Co.*, 19 Cal. App. 23 [124 Pac. 875, 880]: ''It is a fact of common knowledge that a very large part of the mercantile business of the country is, as a matter of business, if not, indeed, as a matter of necessity, carried on by corporate organizations rather than by partnerships. It would greatly hamper their usefulness if all the daily current purchases and sales of merchandise could be made only by resolution of directors or that the public dealing with their officers would do so at the peril of having their contracts repudiated when they might happen to be unfavorable to the corporation, or less profitable than was anticipated when made. Suppose an incorporated mercantile house of San Francisco should, in its corporate name, signed by its secretary, and on the verbal authority of the president and one other of the five directors, cable an order to a Paris house for a bale of drygoods of a kind and value previously purchased from the latter by the former. Must the Paris house demand and receive an authenticated copy of a resolution by the board of directors of the San Francisco house authorizing the order for goods before the Paris house could safely fill the order? Suppose the Paris house should ship the goods, and on arrival it happened that they had depreciated in value and the San Francisco house repudiated the contract, claiming their right to do so under the rule now contended for. A system of law that would tolerate such an evasion of responsibility would be unworthy of a civilized people.''

In *Leitch* v. *Marx*, 21 Cal. App. 208, 213 [131 Pac. 328, 330], the rule is thus stated: ''Under all the authorities, the president or manager, or other officer having direct super-

intendence of the affairs of the corporation, may transact for and bind it in all matters coming within its ordinary course of business."

We are satisfied that the order was binding on the appellant corporation.

Judgment affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.